PETER SCHILLO *et al.*

*v.*

JOHN McEWEN.

| 90  | 77  |
| 140 | 524 |
| 90  | 77  |
| 67a | 118 |
| 90  | 77. |
| 88a | 53  |

1. LIMITATIONS—*when the statute begins to run.* Where materials are furnished from time to time, under a special contract to furnish the iron work necessary for a building, and the special contract is abandoned before its full performance, by reason of the destruction of the building in an incomplete state, in an action as upon a *quantum meruit,* the Statute of Limitations will begin to run as against each item or parcel from the time of its delivery, the same as though the materials had been delivered without any special contract at all.

2. REMEDY—*upon quantum meruit, where special contract is abandoned.* Where the law affords a remedy in case of a partial performance of a contract, it is not upon the original contract, but upon a *quantum meruit* upon an implied promise to pay so much as the material or labor is reasonably worth when delivered or accepted, as though no contract had ever existed. When a special contract is abandoned by consent, the effect is the same as if the materials were delivered or labor done without any special contract.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

Mr. FRANCIS LACKNER, for the appellants.

Messrs. HOYNE, HORTON & HOYNE, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This was an action of assumpsit, brought by plaintiffs to re-
cover of defendant for cast and wrought iron work delivered
for the Ewing Block, which defendant had undertaken to erect
for the Ewing estate.    The declaration contains only the com-
mon counts, to which defendant pleaded the general issue, and
the Statute of Limitations applicable in such cases.    Plaintiffs
claim their contract was with defendant to furnish a certain
amount of iron to be used in and about the building, but de-
fendant as confidently asserts he had no contract with plaintiffs.
A large quantity of iron was furnished for the building, but
not all called for by the contract, when the building was de-
stroyed by fire on the 9th of October, 1871.    After the fire the
work on the building seems to have been abandoned by all
concerned.

There is no dispute that the largest portion of the items of
iron work for which plaintiffs claim, was delivered in July
and August before the destruction of the building.    One of
plaintiffs, however, testified that "five thresholds were deliv-
ered on the 1st of October," but in that he must be mistaken.
The advanced stage of the building when it was destroyed,
about which there is no controversy, shows conclusively all that
kind of work was used long before that date.    It is true, one of
the plaintiffs, when recalled a second time, stated that the iron
work delivered after the 1st of October were frames for prismatic
lights.    But as to these items the evidence is so conflicting
the court was not warranted in believing that any iron work
for any purpose was, in fact, delivered about the 1st of Octo-
ber previous to the destruction of the building.    This action
was not commenced until the 25th of September, 1876, and
a period of more than five years having elapsed since the de-
livery of any of the iron work, it seems the Statute of Limi-
tations interposed would constitute a complete bar to the
action.    Even if it be conceded the frames for the prismatic
lights were delivered within a period of five years, counsel

does not, as we understand him, insist it is such a running account as would withdraw the other items of iron work from the operation of the Statute of Limitations. The right of recovery is not based upon a running account, nor upon any express contract, but upon an implied contract which counsel insists arose and took the place of the express contract on the 9th of October, 1871, when the express contract was abandoned on account of the destruction of the building in an incomplete state. Where the law affords a remedy in case of a partial performance of the contract, it is not upon the original contract, but it is upon the *quantum meruit* on an implied promise to pay so much as the material and labor were reasonably worth when delivered or accepted, as though no contract had ever existed. *Bannister* v. *Read,* 1 Gilm. 92; *Webster* v. *Enfield,* 5 id. 298. Had there been no special contract, the law would imply an agreement to pay for the iron work as delivered, and on failure to do so, an action would lie. The special contract having been abandoned, the effect is the same as if the materials had been delivered without any special contract. It is plain, if the original agreement was abandoned on the destruction of the building in an incomplete state, and before plaintiffs had fulfilled their contract, there could be no recovery for what was done, except upon an implied agreement to pay so much as the materials were reasonably worth, and evidently the Statute of Limitations will begin to run from the date of furnishing the materials. In this case no portion of the iron work, as we are authorized to believe from the finding of the court below, was delivered within five years before the commencement of the suit, and hence the statute pleaded is a bar to the action.

The judgment must, therefore, be affirmed.

*Judgment affirmed.*

Mr. JUSTICE WALKER: I am unable to concur in the doctrine of this opinion. I hold a party must have a full and complete right of recovery for the full period of the Statute of Limitations, before his action can be barred.

Mr. JUSTICE DICKEY: I concur in the view taken by Mr. Justice WALKER. In my judgment the implied contract to pay upon a *quantum meruit,* for the part of the goods delivered, did not arise from the delivery of the goods alone, but from that fact and the fact of abandonment of the contract. These combined when the fire occurred, and not before. Then, and not till then, did the Statute of Limitations begin to run.