## Hamilton v. Estate of Hamilton, Deceased.

[No. 3,225.   Filed January 22, 1901.]

BILL OF EXCEPTIONS.—*Evidence.*—Where the record shows that the official reporter filed the longhand manuscript of the evidence in the clerk's office; that the appellant requested in writing that such original longhand manuscript be embraced in the bill of exceptions, without copying, and this was done; that the bill thus prepared was presented to the trial judge for settlement and signature within the time allowed, and was approved and signed by him, and that when so signed it was duly filed in the clerk's office and a vacation entry made thereof, and that such bill was incorporated in the transcript without copying, the evidence forms a part of the record. *p. 116.*

SAME.—*Instructions.—Copying.*—Instructions which are embraced in a bill of exceptions containing the evidence that is certified up on appeal without copying do not thereby become a part of the record, and cannot be considered by an appellate court.   *pp. 116, 117.*

EVIDENCE.—*Sufficiency.—Weighing.*—If the plaintiff in an action against a decedent's estate gave evidence fairly tending to sustain her claim, and there was an entire absence of evidence to the contrary, an appellate court can say that a verdict for the defendant is not sustained by sufficient evidence, but otherwise it cannot. If there is any conflict in the evidence this court cannot weigh it. *pp. 117, 118.*

Hamilton *v.* Estate of Hamilton.

CONTRACTS.—*Common Family.—Mixed Question.*—Whether or not parties live together as a common family is a mixed question of law and fact. *p. 120.*

SAME.—*Evidence.—Submission to Jury.*—Where the daughter-in-law of deceased prosecuted a claim against his estate for boarding and caring for him, the testimony of a son of the claimant, as to statements by the decedent when the claimant was nursing and waiting on him that she should be paid, and proof that he once paid her for "board, washing, and services rendered," together with evidence that she rendered valuable services in caring for and waiting on him, sufficiently tended to establish a contract on his part that he would pay her to entitle her to have the case submitted to the jury, although she and the deceased were living together as members of one family. *pp. 118-120.*

EVIDENCE.—*Contract.—Receipt.*—A receipt given by the claimant to the deceased for money paid on account of board, washing, and services rendered, and found among his papers after his death is admissible in evidence to prove a contract on his part to pay for board furnished and services rendered after its date, while still living in the same relation as when it was given. *p. 119.*

CONTRACTS.—*Compensation.—Implied Rate.*—Where a promise or agreement to pay is established, but no amount or rate of compensation is proved, the law will imply that the compensation shall be such a reasonable sum as the facts warrant. *p. 120.*

HUSBAND AND WIFE.—*Contract of Wife.*—A married woman may lawfully contract to furnish board and perform services in caring for persons other than her husband or family, and may lawfully charge and enforce payment for the same in her own name. *pp. 120-122.*

From the Hancock Circuit Court. *Reversed.*

*K. M. Hord, E. J. Binford, E. W. Felt* and *E. Sample,* for appellant.

*E. Marsh* and *W. W. Cook,* for appellee.

WILEY, J.—January 25, 1898, appellant filed a claim against the estate of Stephen Hamilton, deceased, aggregating $2,629. The claim embraces items of account running from April, 1886, to April, 1897, and was for nursing, caring for, boarding and washing for decedent. The administrator, appearing for the estate, did not file any affirmative answer. Trial was had by jury, and, at the conclusion of the evidence, the court, on appellee's motion, instructed

the jury in writing to return a verdict for appellee. Appellant moved for a new trial, and this motion was overruled. Three causes were assigned in the motion for a new trial, viz.: (1) That the court erred in its instruction directing a verdict; (2) that the verdict was not sustained by sufficient evidence, and (3) that the verdict was contrary to law. The only available error assigned is the overruling of the motion for a new trial.

Some technical objections are urged by appellee's counsel that the evidence is not properly in the record, and hence no question is presented for decision; but we are clearly of the opinion that in this counsel are in error. The record shows that the official reporter filed the longhand manuscript of the evidence in the clerk's office; that appellant requested in writing that such original longhand manuscript be embraced in the bill of exceptions without copying; that this was done; that the bill thus prepared was presented to the trial judge for settlement and signature; that he approved and signed it, and that when so signed it was duly filed in the clerk's office, and a vacation entry made thereof. Upon this showing, we hold that the evidence is in the record.

In our judgment, however, the instruction given by the court is not in the record. Following the certificate of the official reporter to the longhand manuscript of the evidence, and the certificate of the clerk showing that the longhand manuscript of the evidence was duly filed in the clerk's office, is the following: "And be it further remembered that upon the trial of said cause on the 6th day of December, 1899, at the request of the defendant the court gave to the jury the following instructions, to the giving of which * * * the plaintiff at the time excepted, and which in-instructions are in the words and figures following." Then follows the instruction given, and it is shown that it was signed by the judge and excepted to by appellant. The bill then closes as follows: "And be it further remembered that

the above and foregoing longhand transcript of the evidence so taken, reported, and filed as aforesaid, contains all the evidence given in said cause, with the objections thereto, rulings of the court on such objections, and exceptions to such rulings, and that the same is ordered to be certified to without copying as a part of the records of this cause. And on the 1st day of August, 1899, the plaintiff tendered this her bill of exceptions and prayed that the same might be signed, sealed, and made a part of the record in this cause, which is accordingly so done this 1st day of August, 1899." To this certificate is attached the original signature of the trial judge. It will thus be seen that the record before us embraces a single bill of exceptions which contains both the evidence and the instruction given by the court. It is an original bill, as signed by the judge, inserted in the record by the clerk without copying. Under these facts, the evidence is in the record, as we have said, for there has been a substantial compliance with the act of 1897. (See Acts 1897, p. 244, §638a Burns Supp. 1897, §650a Horner 1897.) But as was said by this court in the case of *City of New Albany* v. *Lines,* 21 Ind. App. 380: "The statute does not provide that the transcript may contain an original bill embracing instructions to the jury, and, to bring them before this court by bill of exceptions, the bill must be copied into the transcript." Citing *Leach* v. *Mattix,* 149 Ind. 146. See, also, *Carlson* v. *State,* 145 Ind. 650; *Adams* v. *State,* 156 Ind. 596. The instruction is not in the record, and can not be considered.

This leaves for our consideration the second and third reasons for a new trial. These rest upon the evidence. Under the rule so well established in this State, if there is any conflict in the evidence, we can not weigh it. In this case the only evidence given was that offered by the appellant, and if there is any evidence in the record tending to support her claim, and an entire absence of any evidence to the contrary, then we can say, without an infringement of

the rule to which we have just referred, that the verdict is not sustained by sufficient evidence. Appellee discusses the questions raised by the record under the second and third reasons for a new trial on the theory that decedent lived in appellant's family as a member of the family, and that the evidence fails to show an express contract by which the decedent promised to pay appellant for services performed for him, and that therefore there could be no recovery. The decedent was a widower, and an old man. The appellant's husband was his son. The decedent had broken up house-keeping and did not have or control any domicil or household of his own. The evidence shows that he lived with his children. He would remain with one of them for a time and then with another, but most of the time he spent at the home of the appellant and her husband. At the time of his death he was at the home of one of his daughters. He was a man of mature years, infirm, and did not perform any labor. While he was living with the family of appellant and her husband, he fell and broke his leg, and a large item of appellant's claim was for nursing and caring for him during his disability resulting from such accident.

Appellant urges that there was evidence tending to prove a promise of decedent to pay her for services rendered, and that such services were rendered in pursuance of such promise. We must, therefore, look to the evidence to find whether there are any facts disclosed which tend to show any contract on decedent's part to pay appellant for services, or from which any legitimate inference can be drawn tending to support appellant's cause of action.

Harvey H. Hamilton, son of appellant, testified that the decedent made his home at his father's house the principal part of the time for twelve or thirteen years prior to his death; that soon after the decedent came to live in the family he heard him tell his mother (appellant) "that she should be paid for caring for him and waiting on him." The same witness testified that at a subsequent time he

heard the decedent say that appellant "should be well paid." At another time, after the decedent had recovered from a sinking spell, he heard him say to appellant that he was lots of "bother but that  *  *  *  she should be well paid for it." He further said that at another time, while decedent was in his room, he heard him say to appellant that he was "lots of trouble and that she should be well paid for waiting on him". He also testified substantially to the same facts as to what decedent said after he had broken his leg. Another witness, a daughter of appellant, testified that she had frequently heard decedent say that appellant should be well paid for waiting on and caring for him. Appellant also introduced a receipt in evidence, as follows: "July 13, 1888. Received of Stephen Hamilton a promissory note of $424 payable December 25, 1888, in full for board, washing, and services rendered." This receipt is signed by C. J. Hamilton, appellant's husband, and appellant, and was found among decedent's papers after his death and was in possession of the administrator. No pretense is made that C. J. Hamilton had, or claimed to have, any cause of action against his father's estate for "board, washing, and services rendered." The record does not disclose whose note it was that was thus surrendered, nor does it appear why the receipt was signed by appellant and her husband. The receipt, it seems to us, however, indicates that the decedent was thus remunerating some one for "board, washing, and services rendered", and was competent evidence to be considered by the jury in connection with the other evidence to determine whether or not there was any agreement on the part of decedent to pay appellant for services, etc. The receipt might be considered by the jury upon the proposition as to whether or not the decedent recognized a liability to appellant upon the theory that he had promised to compensate her. There is much additional evidence tending strongly to prove that appellant did wait on decedent; that she cared for him when he was sick and during the time his

broken leg was healing, and that she washed for him. It is also shown by the evidence that the decedent stated on more than one occasion that his home was at his son's, Cicero Hamilton. It also is shown by the evidence that he spent a part of his time with his other children in their respective families. There is evidence in the record from which the jury might legitimately have reached the conclusion that there was an express promise on the part of the decedent that he would pay appellant for the services, etc., she was to render him. True there is no evidence showing that the amount or rate of compensation was fixed, but if there was a promise or an agreement to pay, the law would supply the omission and authorize such reasonable compensation as the facts would warrant. We do not hold that the facts disclosed by the record establish that family relations existed between decedent and the family of Cicero Hamilton within the meaning of the law, for it is not necessary in the decision of the case to decide that question. What we do decide is, that there is competent evidence in the record upon which the jury had a right, under proper instructions, to express its judgment as to whether or not the decedent was a member of the family, and whether or not he promised to pay appellant for her services, etc. As to whether or not parties live together as a common family is a mixed question of law and fact, and it was so held in the case of *James* v. *Gillen*, 3 Ind. App. 472, 480.

It is suggested in argument of counsel for appellee that even if it be conceded that there is some evidence tending to support appellant's cause of action, yet she could not recover for the reason that the contract relied on was not one which appellant was authorized to make. We can not agree with counsel in this proposition. Under the statute and the authorities in this State, some of the items, at least, demanded by appellant in her verified claim are such as she might lawfully charge and collect payment therefor. This exact question was decided by this court in the case of *Ar-*

Hamilton *v.* Estate of Hamilton.

*nold* v. *Rifner*, 16 Ind. App. 442, where it was expressly held under §6975 Burns 1894, §5130 Horner 1897, that a married woman is entitled to all her earnings accruing from any service rendered by her for persons other than her husband or her family. That case was similar to the one at bar. There appellee was a married woman living with her husband. She filed a claim against the estate of one William Rifner, of whose estate appellant was administrator, for services rendered William in caring for and nursing him in his lifetime. In deciding the case, the court said: "By this statute [§5130, *supra*], however, the earnings and profits of a married woman belong to her. The appellant insists that it is not the earnings of all of her labor except that rendered for her family that is hers, but that it is only the earnings and profits resulting from her labor in carrying on a trade or business that the statute makes her property. We cannot concur in this contention. The statute specially gives to a married woman, not only the earnings and profits accruing from any trade or business carried on by her, whether the result of her own labors or not, but it also makes her the owner of her earnings when she performs services for persons other than her husband or her family. The statute does not relieve the wife from the performance of any of the duties owing to her husband or family, but it simply vests in her the ownership to the earnings resulting from her services to others. The services claimed to have been rendered by the appellee, for which she filed the claim in controversy, were not such as were owing from her, to either her husband or her family, and were not rendered for their comfort, welfare, or benefit. They were rendered to a stranger to whom she owed no such duty. If the services were rendered by the appellee there can be no doubt but that she is the proper person to receive pay therefor." So in the case before us, appellant did not owe to decedent, on account of her marital relations, any family or legal duty. No pretense is here

made that appellant neglected or failed to perform any duty she owed to her husband or family on account of any services she rendered to decedent, and we see no reason, under the statute or the decided cases, that precludes her from recovering for the services she actually rendered him.

In conclusion, we wish to say that we do not hold that all the items embraced in appellant's claim are recoverable by her, but that there is some evidence in support of her cause of action, and as there is no evidence against it we can not say that the verdict is sustained by sufficient evidence. Judgment reversed, and the court below is directed to grant appellant a new trial.