OFFENBACKER, ADMINISTRATOR *v.* OFFENBACKER.

[No. 14,672.   Filed December 20, 1933.   Rehearing denied April 6, 1934.   Transfer denied May 24, 1934.]

*Thomas A. Dailey, Wilson S. Dailey,* and *John H. Dailey,* for appellant.

*Johnson & Zechiel,* for appellee.

CURTIS, J.—This is an appeal from a final judgment for $1,560.00 in the Probate Court of Marion County, Indiana, upon a claim in favor of Ethel M. Offenbacker against the estate of Lydia Offenbacker, deceased. The appeal is prosecuted by Charles A. Offenbacker, administrator of the said estate, as such administrator, under the provisions of the code governing appeals in probate matters.

The complaint or claim was in one paragraph. No further pleadings were filed and none were necessary for a determination of the matter in issue. The claim was submitted to the court, without the intervention of a jury, and a judgment was rendered against the estate, in favor of the appellee in the amount above indicated. The appellant, in due course, filed a motion for a new trial which was overruled and an exception reserved and this appeal prayed and perfected, assigning but one error, to wit: "The Probate Court of Marion County, Indiana, erred in overruling appellant's motion for a new trial." The

said motion contains seven causes or grounds which, in substance, are as follows: the decision of the court is contrary to law; is not sustained by sufficient evidence; error in the amount of the recovery in that it is too large; and alleged error in the rulings of the court in the admission of certain evidence over the objection of the appellant and also in the exclusion of certain evidence over the objection of the appellant.

The claim of the appellee which is the basis for the finding and judgment, omitting formal parts, is as follows: "Comes now, Ethel M. Offenbacker, and files her claim against the above entitled estate and alleges and says that she is the wife of a son of the deceased Lydia Offenbacker; that the deceased and claimant lived together for more than nineteen years prior to her death; that for a period of five years or more before the decedent's death, she was confined to her bed through illness and that during all of such time she had been an invalid; that this claimant and her husband took care of the decedent during all of such time and up to the time of her death; that the decedent was helpless during most of the said five years; that she could not move herself out of her bed and could not walk; that claimant and her husband were obliged to carry her to and from her bed; that she could not and did not earn any income whatsoever; that her entire care and keep became and was a burden of this claimant and her husband; that during practically all of the last five years of decedent's life, claimant or her husband were in constant attendance upon decedent, day and night.

"The claimant was obliged to and did get out of bed at numerous times during the night time to attend the wants, wishes and necessities of the decedent; that for many months before her death the decedent lost the control of her physical self and that as a consequence frequent changing of decedent's bed clothing was made

necessary and that claimant and her husband performed these duties and services; that after decedent became bed-fast she frequently told claimant and her son that she wanted them to be compensated for their services and expected to do so; that she at one time was desirous of deeding to claimant and claimant's husband the real estate which she owned and which she continued to own to the time of her death, but that decedent's son, Charles Offenbacker, objected thereto; that decedent consulted an attorney asking her right to make a deed, notwithstanding the objections made by her son, but that she was told that because of her infirmity and her age, it would be advisable not to try to make a deed over the objections of her son; that because of the physical condition of decedent, claimant could not look elsewhere for employment and could not leave decedent and that she was obliged to and did care for her during the remainder of her life; that the services rendered by claimant for the decedent, as hereinabove described, were reasonably worth $15.00 per week and that the total reasonable value of the services performed by claimant for the entire term of the years in which decedent was an invalid is $3,500.00; that claimant has never been paid anything for such services; that the services were not rendered gratuitously, but under expectation of compensation as promised by deceased.

"WHEREFORE claimant prays that she be allowed for her services the sum of $3,500.00."

The appellee, Ethel M. Offenbacker, is the wife of Harley Offenbacker; they each filed claims against said estate for personal services in the care of the decedent. The court heard both cases at the same time and allowed each claim and rendered judgment in favor of each claimant in the same amount, to wit: Fifteen hundred sixty dollars. No appeal was taken from the judgment in favor of Harley

Offenbacker. The services were all rendered in the home of the two claimants where the decedent had also lived for more than nineteen years. For at least the last four years of decedent's life she was confined to her bed as an invalid. There was evidence given at the trial to the effect that she was a large woman, a paralytic, and almost totally helpless; that she had to be lifted bodily from her bed; that her bodily functions were involuntary requiring the bed to be changed frequently; that her food was prepared and served to her by the two claimants who likewise cleaned and bathed her and washed her bedding and clothes and kept her clean and that she required almost constant attention and care requiring the claimants to remain almost constantly at home to minister to the many exacting cares for her comfort. There was evidence that such services were reasonably worth $15 to $30 per week, and that the value of the services rendered by the appellee was as great as those rendered by her said husband. There is an abundance of evidence that the decedent did not expect to be cared for as a gratuity and that she expected either to pay for same herself or that her estate would pay; that she desired to deed to her said son Harley all of her property by reason of the services rendered her by him and the appellee but was prevented from so doing on account of her age; that on at least two occasions she told the witness Jessie Hancock that there was no one else to take care of her and that for such care on the part of her son as well as his wife she had endeavored to make the deed above mentioned. It thus appears that there is evidence from which the trial court could conclude that the decedent expected that the services rendered by both her son and the appellee would be paid for and that neither service would be a gratuity.

The appellant contends that the decedent expected

that only her son Harley Offenbacker be paid and that there is no evidence to sustain a finding in favor of the appellee. The further contention is made that such services as were rendered by the appellee belonged to her said husband and that when his claim was allowed against the estate it necessarily included any sum that was earned by his wife.

At the outset it may be observed that this is not a case of the decedent living with her son and his wife without any agreement to pay for the services rendered her. Any presumption of gratuity which might arise by relationship is overcome by the direct and positive evidence of several witnesses that the decedent did not expect such services to be gratuitous and that she in effect said that either she or her estate would pay. But the appellant insists that such services as were rendered by the appellee belonged to the husband. The authorities cited by the appellant on this proposition are to the effect that the services and earnings of the wife in the home in the care of her husband or family belong to the husband. There can be no doubt about the law in that regard, but in our opinion the instant case presents no such question.

Section 8740, Burns 1926, §38-103, Burns 1933, §5664, Baldwin's 1934, provides as follows: "A married woman may carry on any trade or business and perform any labor or service on her sole and separate account. The earnings and profits of any married woman, accruing from her trade, business, services or labor, other than labor for her husband and family, shall be her sole and separate property." Such services as were rendered by the appellee to the decedent in the instant case did not grow out of any legal duty she owed to the decedent. The decedent was a stranger to the appellee under the law. See *Hamilton* v. *Estate of Hamilton* (1901), 26 Ind. App. 114, 59 N. E. 344. The wife in

that case rendered services in the home in caring for her husband's father who was suffering from a broken leg. The court quoted from *Arnold* v. *Rifner* (1896), 16 Ind. App. 442, 45 N. E. 618, as follows: "The statute specially gives to a married woman, not only the earnings and profits accruing from any trade or business carried on by her, whether the result of her own labors or not, but it also makes her the owner of her earnings when she performs services for persons other than her husband or her family. The statute does not relieve the wife from the performance of any of the duties owing to her husband or family, but it simply vests in her the ownership to the earnings resulting from her services to others." . . . and then added:

"So in the case before us, appellant did not owe to decedent, on account of her marital relations, any family or legal duty. No pretense is here made that appellant neglected or failed to perform any duty she owed to her husband or family on account of any services she rendered to decedent, and we see no reason, under the statute or decided cases, that precludes her from recovering for the services she actually rendered him."

See also: *Crampton et al., Administrators* v. *Logan* (1902), 28 Ind. App. 405, 63 N. E. 51; *Elliott et al* v. *Atkinson et al.* (1910), 45 Ind. App. 290, 90 N. E. 779; *City of Jasonville* v. *Griggs* (1924), 82 Ind. App. 104, 144 N. E. 560.

The appellant relies upon the case of *Hensley* v. *Tuttle* (1897), 17 Ind. App. 253, 46 N. E. 594, but that case is readily distinguishable from the instant case. In the Hensley case the husband brought suit for the services rendered by himself and wife to the decedent therein. There was a verdict in his favor. It was contended that the verdict was not sustained by sufficient evidence and was contrary to law in that the evidence showed that the services were rendered jointly by the

husband and wife. The judgment was affirmed and the court said, among other things, that, "The fact that the wife assisted her husband in nursing and caring for the decedent does not necessarily give her a separate cause of action for such services." It was further said that, "The wife has the same right to give her husband her services in the household that she had before the passage of the statute." It was also found that, "The services she rendered were for her husband and were in the line of household duties." Nowhere in that opinion is it held that the wife can not maintain an action for services, such as were rendered in the instant case, on her own account. In fact just the reverse is indicated.

The instant case presents an almost entirely different situation. Here both the husband and wife filed separate claims for the services of each respectively. Both claims were heard by the same court at the same time and upon the same evidence. The appellant has pointed to no place in the record to show or indicate that the husband attempted to or did recover for the services rendered by the wife. The value of the services rendered by her were her separate property and she need not give them to her husband unless she so desired. The trial court evidently concluded that the decedent was totally helpless for at least 4 years or 208 weeks and that the said services were reasonably worth $15.00 per week amounting in all to $3,120.00 and that each claimant was entitled to ½ thereof, to wit $1,560.00, for which sum judgment for each was rendered. The evidence fully warranted such a conclusion and it fully sustains the amount of the recovery.

The fact, if it be a fact, that the decedent said that she expected to pay her son direct for the services rendered both by him and by the appellee would certainly not divest the appellee's title to the value of the

services rendered by her. The decedent received the exacting services rendered both by the husband and by the appellee under what the evidence shows was a clear expectation to pay for them and that they were not a gratuity.

The decision of the court is sustained by sufficient evidence and is not contrary to law unless it may be said to have been improperly affected by an error or errors of law occurring at the trial, and this brings us to a consideration of the alleged errors as to the evidence.

Complaint is made by the appellant that in his cross-examination of the witness Jesse C. Hancock the court sustained the appellee's objection to the question relative to whether or not the witness had been employed anywhere during the last four years. The appellant also asked the same witness whether or not she (decedent) said whether or not Harley Offenbacker or his wife ever paid any rent for the home place. Upon the objection of the appellee the court excluded the evidence sought by the question. The same witness was also asked by the appellant the following question on cross-examination: "Question. Don't you know as a matter of fact that they attended church services and left the old lady by herself at home?" The objection of the appellee to this question was also sustained. If we should assume that each of the above questions was proper cross-examination yet in the main they were upon collateral matters. If each question had been answered and the answer had been what the appellant evidently hoped it would be, yet we cannot see how any different result would have been reached. No prejudicial error, in our opinion, was made in the said rulings of which complaint is made. After a careful reading of the record we are convinced that substantial justice has been done. There was ample evidence from

which the court could conclude that the services were both exacting and faithfully performed.

We have found no reversible error. The motion for a new trial was correctly overruled.

Judgment affirmed.