## PITTS' Administrator *v.* PITTS.

Action by *A* against the estate of *B*, her father, on a note for 1,000 dollars, given by him in his lifetime, payable to her at his death. Answer, first, want of consideration, and second, that the note was given in consideration of *A's* agreement to live with and keep house for her father, during his life, which she failed to do. Issues. Trial by jury. It appeared that she resided with, and kept house for, her father, six or seven years after her majority, and, when the note was given, in 1860, she agreed not to marry, but to take care of him during his life. She did not marry. The evidence was conflicting as to the amount and kind of services rendered by her for him, and as to the precise terms of their contract.

*Held*, 1. That, under the circumstances, the following instruction was proper: "If the note was executed in consideration that *A* should live with and keep house for her father during his life, and she, without sufficient cause given by him, or without his consent, left his service before his death, she would be entitled to recover the reasonable value of her service while she lived with him. But, if she left his service, with his consent, not obtained through her own misconduct, some time after the execution of the note, and no effort was made by him to recover possession of the note, or correct it, the jury will be authorized, in the absence of any evidence tending to show an abandonment of the contract, to find that it still existed, and that he waived the further performance of it on her part, and she will be entitled to recover the whole amount."

2. That the following also is correct: "If *A*, after her majority, continued to live with her father, as she had done previously, with no new duties or responsibilities, and was provided with necessaries, &c., as one of the family, she would not be entitled to recover for such services, unless there was an express understanding between them, before these services were rendered, that she should receive such compensation, and, if the note was given for such past services, and there was no such understanding between them, she can not recover. But, if the note was given for such past services, the fact that it was given, will raise a presumption that there had been a

previous understanding between them, that such compensation should be made, and, unless such presumption is overcome by evidence, that no such understanding existed, she will be entitled to recover."

APPEAL from the *Marion* Common Pleas.

DAVISON, J.—*Martha Ann Pitts* who was the plaintiff, sued *George W. Pitts*, administrator of the estate of *Stephen Pitts*, deceased, upon a promissory note given by his intestate. The note is in this form:

"$1,000.                          *Indianapolis, March* 20, 1860.

"For value received, I promise to pay, at my death, to *Martha Ann Pitts*, 1,000 dollars, without  ny relief whatever from the appraisement laws.          STEPHEN PITTS."

Defendant answered:

1. No consideration.

2. The note was made in consideration of the promise of the plaintiff to live with *Stephen Pitts*, and manage his household affairs from the date of the note until his death, she being his daughter, and having been previously living with him as one of his family. And defendant avers that the plaintiff, immediately after the making of the note, and before his decease, left his house, and, at all times thereafter, failed to live with him, and take charge of his household affairs; wherefore the defendant says that the consideration of the note has failed, &c.

3. The note was obtained from *Stephen Pitts* by undue and improper influence, in this, that when it was so obtained, he was old and infirm in mind and body, and felt dependant upon others for society and comfort, which was well known to the plaintiff, who, by threats that she would leave him, induced him to make the note.

Plaintiff replied by a denial. The issues were submitted

Pitts' Adm'r *v.* Pitts.

to a jury, who, in answer to interrogatories propounded to them, at the instance of the plaintiff, found specially as follows:

1. The note was made in consideration of services already rendered, and to be rendered, by the plaintiff to her father.

2. There was no positive agreement how long the plaintiff was to serve; but the note was never revoked by the father, and he admitted that the absence of the plaintiff, on a certain occasion, was temporary, and that her service was satisfactory to him up to the time of his death.

3. The plaintiff left her father, before his death, only temporarily. It was with his consent. She did not quit his service.

4. There was no evidence of an express agreement; but, from the fact that the note had been given for past and future services, we presume there had been a previous understanding or agreement between the plaintiff and her father.

The jury also found generally for the plaintiff, and assessed her damages at 1,150 dollars. Motion for a new trial denied, and judgment, &c. The causes for a new trial, as relied on by the appellant, are thus assigned:

1. The verdict is not sustained by the evidence, and is contrary to law.

2. The Court erred in its instructions to the jury, and also in refusing to instruct, as moved by the defendant.

It appeared in evidence, that the plaintiff had resided with her father, *Stephen Pitts*, some six or seven years after she arrived at full age, and that when the note was given, *March* the 20th, 1860, she agreed not to get married, and to remain with him and attend to his affairs until his death, and one witness, *Mary Waldo*, who was present when the note was executed, testified, that that was the consideration of the note. But there was other testimony which tended to show that it was given for past as well as future services. And,

further, there was evidence tending to prove, that the plaintiff, about one month prior to the death of her father, with his consent, left his house, he, at the time she left, stating that he had rented, or was about to rent, his farm to his son, *Frank Pitts;* that he intended to make a visit to *Tennessee,* and when he returned from his visit, he wished to have no care, and would live in town. And there was, also, evidence which tended to prove, that the plaintiff, in the year '1855, took charge of the family of her father, and attended to his household affairs, until she left, as aforesaid, in *August, 1860.*

The defendant, at the proper time, moved thus to instruct the jury: "If the note sued on was given in consideration that the plaintiff should live with, and keep house for, her father, *Stephen Pitts,* the maker, during his life, and if the plaintiff left the service of *Stephen Pitts* before his death, she is only entitled to recover the reasonable value of her services while she lived with him, viz: from the time the note was made until she left, and this, whether she left voluntarily, or with or without his consent."

The Court refused this instruction, but gave the following: "If the note in suit was executed in consideration that the plaintiff should live with, and keep house for, her father, during his life, and if the plaintiff, without sufficient cause given by her father, or without his consent, left his service before his death, she will only be entitled to recover the reasonable value of her services while she lived with him. But if the plaintiff left the service of her father, with his consent, not obtained through her own misconduct, some time after the execution of the note, and no effort was made by him to recover possession of the note, or cancel it, the jury will be authorized, in the absence of any evidence tending to show an abandonment of the contract, to find that it still existed, and that he waived the further performance of the contract on

Pitts' Adm'r *v.* Pitts.

her part, and she will be entitled to recover the whole amount."

These instructions, as we understand them, assume that *Pitts*, the maker of the note, consented to the plaintiff's leaving his service. If that was the case, he waived any further performance by her of the contract, and the result is, she was entitled to recover the full amount of the note. Indeed, the rule is well settled, that "no one, who waives or dispenses with the performance of a contract, can rely on a failure to perform it, either as a defence or a cause of action, for no one can complain of a default which he has caused or sanctioned." 1 Smith's Leading Cases, p. 466, and authorities there cited. See, also, *McKee* v. *Miller*, 4 Blackf. 222. It is true, had the transactions between the plaintiff and her father resulted in a rescision of the entire contract, she would only be entitled to recover the value of her services performed under it; but here no such rescision occurred, because, having consented to her leaving his service, he himself had no right to rescind the contract, or to consider it as having been rescinded by her. *McKee* v. *Miller, supra; Patterson* v. *Coats,* 8 Blackf. 500. We perceive no error in the instruction given by the Court, or in its refusal to give the one moved by the defendant.

Again, the defendant moved this instruction: "If the plaintiff, after arriving at the age of 21, continued to live, as previously, in the family of her father, and was provided with necessaries, &c., as one of the family, she would not be entitled to recover any other compensation for services rendered while so living with him, unless there was an express understanding between them, before the services were rendered, that she should receive other compensation. If, then, there was no such understanding between the plaintiff and her father, and if the note in question was given in consideration of such past services only, such consideration does not support it, and the plaintiff can not recover."

Pitts' Adm'r v. Pitts.

This instruction was also refused. And the Court instructed as follows: "If the plaintiff, after she arrived at full age, continued to live with her father, as she had done previously, with no new duties or responsibilities assumed in the family by her, and was provided with necessaries, &c., as one of the family, she would not be entitled to recover for such services, unless there was an express understanding between her and her father, before these services were rendered, that she should receive such compensation, and if the note was given for such past services, and there was no such understanding existing between them, she can not recover. But if the note was given for such past services, the fact that it was given, will raise a presumption that there had been a previous understanding or agreement between the plaintiff and her father, that such compensation was to be made, and, unless such presumption is overcome by evidence, that no such understanding existed, the plaintiff will be entitled to recover."

The instruction just recited seems to be correct. The note itself is a contract which, *prima facie*, imports all the essential elements of a valid consideration; and, it seems to us, that the consideration, thus implied, can not be impeached by mere proof that the note was given for past services. To allow such proof to subserve the purposes of the defendant, would impose on the plaintiff the burden of proving that which the note, on its face, imports. Hence, the jury had a right to infer, from the note itself, that the services for which it was given were performed under an agreement between the plaintiff and her father—that for the performance of them, she was to be compensated. The rulings upon the two last instructions were, in our opinion, not erroneous.

The evidence is upon the record, and is to some extent conflicting. Still there was evidence tending to support both the special and general findings, and we are, therefore, not inclined to disturb the verdict.

*Per Curiam.*—The judgment is affirmed, with costs, and 3 per cent. damages.

*S. Major*, for the appellant.

*Lucian Barbour* and *J. D. Howland*, for the appellee.