Thomas O'Brien, for use, etc.

*v.*

Patrick J. Sexton.

*Filed at Ottawa March 24, 1892.*

1. Master and servant—*servant improperly discharged—right of recovery.* Where a contractor employed to furnish materials and to do certain work has been improperly prevented by the employer from completing the contract, or, in other words, has been improperly discharged from the performance of the work before its completion, he may recover, under the common counts, what is due him for the work he has actually performed under the contract.

2. Where a servant is discharged, without sufficient legal excuse, before the expiration of his term, he may elect to treat the contract as rescinded, and at once bring an action for the value of the services rendered.

3. Statute of Limitations—*when it begins to run.* Where there is no special contract, the law will imply an agreement to pay for the materials as delivered and the work as done ; but when one continuous piece of work, consisting of a number of parts or items, is to be performed, the Statute of Limitations does not begin to run upon the completion of each separate part or item, but upon the completion of the whole. If the several items are merely parts of one transaction, the statute begins to run from the date of the last item.

4. Same—*action for wrongful discharge of servant—when barred.* Where a workman is forced to abandon work he has agreed to perform, before its completion, by or through the wrongful act of his employer, a cause of action for the breach of the contract will at once accrue, and the Statute of Limitations will commence to run from the time he is so prevented, and a suit to recover damages for a breach of the contract will not be barred before the expiration of five years from that time.

5. Where the plaintiff was employed, by a written contract, to furnish the materials and do all the plastering on certain buildings, and performed most of the work, when he was prevented by the defendant, the employer, from completing his contract, and he brought an action to recover for the materials furnished and labor done, one day before the expiration of five years from the time he was discharged, it was *held*, that the Statute of Limitations was no bar to the action, and that the plaintiff might recover for the entire work done and materials furnished.

APPEAL from the Appellate Court for the First District;—
heard in that court on appeal from the Circuit Court of Cook
county; the Hon. JULIUS S. GRINNELL, Judge, presiding.

Messrs. RICH & STONE, for the appellant:

One who prevents the performance of a condition in a con-
tract, or makes it impossible by his own' act, can not take
advantage of the non-performance of the contract. *Camp* v.
*Baker*, 21 Vt.- 469; *Jones* v. *Railroad Co.* 14 W. Va. 514;
*Moulton* v. *McOwen*, 103 Mass. 591; *People* v. *Holden*, 82 Ill.
93; *Marsh* v. *Kauff*, 74 id. 189; *Blakelee* v. *Holt*, 42 Conn. 226.

When work is performed under a special contract, which
consists of many items constituting but one transaction, the
Statute of Limitations will commence to run from the time
·the last work is done, and work done prior to that time will
be saved from the bar of the statute. *Catholic Bishop* v. *Bauer*,
62 Ill. 188; *Hall* v. *Wood*, 9 Gray, 60.

Messrs. BRANDT & .HOFFMAN, for the appellee.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the
·Court:

This is an action of assumpsit begun on April 20, 1888,
by the appellant for the use of Rich and Stone against the
appellee. Judgment in the trial court was in favor of the de-
fendant below, the appellee here, and this judgment has been
affirmed by the Appellate Court, whence the cause is brought
before us by appeal.

The declaration contains the common counts only, to which
the defendant filed the plea of the general issue. The record
shows a written stipulation, signed by the attorneys of both
parties, by which it is agreed "that either of the parties may
introduce evidence under the pleadings as they stand, the
·same as if an appropriate special count or special plea had
been filed in the case, and the said defendant may introduce
any evidence which would be a defense under the statute of

limitations, or by way of set-off, or recoupment, which would be admissible if the subject matter were properly pleaded."

On December 31, 1882, appellant, O'Brien, and appellee, Sexton, entered into a written contract under seal, by which O'Brien agreed, that he would provide all labor, workmanship and materials and execute to completion all the plastering work required in the erection of a block of nine buildings, containing 36 flats, known as Hotel St. Benedict, and located at the corner of Chicago Avenue and Cass Street in Chicago, in accordance with the plans and specifications prepared by J. J. Egan, architect, and annexed to the contract, the work and materials to be subject to the direction and acceptance of Egan and of Sexton, who was to act as superintendent; and by which Sexton agreed to pay O'Brien $9990.00 as follows: $3000.00 when the work is lathed and browned; $2000.00 when the work is second coated; balance, less 15 per cent, when completed; the 15 per cent reserved to be paid when work is accepted. Under the specifications, O'Brien was to do lathing, plastering, calcimining, patching, repairing, finishing, cleaning and drying, and to commence the plastering within six days after one house was roofed and enclosed, and to continue the work so as to have the entire block plastered within six weeks from the commencement of the plastering. The owner, Sexton, was to have the building suitably enclosed with temporary doors and window sashes, etc.

O'Brien or the men under him worked at the lathing and plastering until the close of Saturday, April 21, 1883, or until sometime in the forenoon of Monday, April 23, 1883, at which time the work, which O'Brien was to do under the contract, had not yet been finished. After April 23, 1883, O'Brien did no more work. Before that day Sexton had paid him $6225.00 upon the contract, and thereafter paid some of his workmen $943.00, making $7168.00 in all, and leaving $2822.00 unpaid. Appellant claims that the cost of completing the contract should not have been more than about $400.00, and that there

is due to him the difference between $2822.00 and $400.00, towit: $2422.00, besides interest and the value of certain materials and utensils alleged to have been appropriated by appellee. On the other hand, appellee claims that he was obliged to pay out more than $5000.00, in addition to said sum of $7168.00, in order to complete the work left unfinished by the appellant, and that, in addition to all this, he lost more than $5000.00 in rents by reason of the delay in the completion of the work.

The pivotal fact in the case is the cause of the failure of appellant to do anything more towards the fulfillment of the contract after April 21 or April 23. The testimony is clear that O'Brien's men worked until the close of April 21. The testimony is not clear as to whether any work was done on April 23, though appellant claims that some work was done on the morning of that day. Was the failure of O'Brien to finish the work due to his fault, or to the fault of appellee? Did appellant abandon the work and neglect and refuse to proceed with it, or did appellee refuse to allow the appellant to proceed and prevent him from fulfilling his contract? These were questions for the jury to decide. Appellee claimed, that appellant abandoned the work without good cause; and there was testimony tending to support this view. Appellant claimed, that appellee refused to furnish him with money to pay the workmen what was due to them on the evening of April 21, and forcibly prevented him from entering the building, and employed outside parties to complete the contract without the consent of the appellant and without notice to him. There was evidence tending to support this contention.

No instructions were given for the plaintiff below, and none seem to have been asked on his behalf. The court gave some fourteen instructions for the defendant, and, among others, the following:

"*Tenth*—If the jury believe, from the evidence, that there was a written contract between O'Brien and Sexton for the

doing of the plastering in question, and that O'Brien failed and refused to perform his part of said contract, and abandoned said plastering work in an unfinished state, and that Sexton did not release O'Brien from said contract, nor waive the performance of it by him, nor prevent O'Brien from completing his contract, then the jury are instructed, as matter of law, that O'Brien cannot recover anything under said written contract. And even though the jury may believe, from the evidence and under the instructions of the court, that O'Brien is entitled to recover under an implied contract for some plastering done by him, yet the jury are instructed, as matter of law, that he cannot, under such implied contract, recover for any work done or materials furnished before April 20, A. D. 1883, but only for work done and materials furnished on or after April 20, A. D. 1883, if done and finished under a contract not in writing, or an implied contract.

"*Eleventh*—If the jury believe, from the evidence and under the instructions of the court, that O'Brien is not entitled to recover under a written contract for the plastering in question, but is entitled to recover under an implied verbal contract for plastering done by him, then the jury are instructed that the Statute of Limitations precludes a recovery by O'Brien for any plastering done by him more than five years before the commencement of this suit. This suit was commenced April 20, A. D. 1888."

These were the only instructions given which related to the statute of limitations, and we think that, under the facts of this case, they were erroneous and calculated to mislead the jury.

Under the stipulation of the parties the declaration is to be regarded as containing not only the common counts, but a special count founded upon a breach of the contract. If the defendant, Sexton, forced the plaintiff, O'Brien, to abandon the work at the close of Saturday, April 21, he was guilty of a breach of the contract at that time, and, if the plaintiff was entitled to recover by reason of such breach, the cause of action

accrued at that time. This suit, having been begun on April 20, 1888, was commenced one day less than five years after the plaintiff did the last work upon the defendant's building.

If the action be regarded as a suit upon the express contract in writing brought to recover damages for a breach thereof, the cause of action was not barred on April 20, 1888.

The jury had a right to consider the evidence tending to show, that the defendant prevented the plaintiff from completing his contract, as well as that which tended to show, that plaintiff abandoned his contract without excuse. If they had found from the evidence, that the plaintiff had been improperly prevented by the defendant from completing the contract, or, in other words, that the plaintiff had been improperly discharged from the performance of the work before its completion, he was certainly entitled to recover under the common counts what was due to him for the work which he had actually performed under the contract. In *Catholic Bishop of Chicago* v. *Bauer*, 62 Ill. 188, we said: "Where there has been only part performance, and the remainder has been waived *or prevented,* and the work performed has been accepted, then, * * * recovery may be had for the contract price of the service performed under an *indebitatus assumpsit.*"

The above instructions contemplate, that the jury might be instructed in favor of a right of recovery upon an implied agreement. "When a servant is discharged without sufficient legal excuse before the expiration of his term, * * * he may elect to treat the contract as rescinded and at once bring an action for the value of the services rendered." (Wood's Law of Mas. and Serv. (2d ed.) sec. 127.)

Whether the measure of the recovery in this case depended upon the contract price of the work actually done under the contract, or upon an implied agreement to pay so much as the labor and materials were reasonably worth, it was wrong to instruct the jury that there could be no recovery for work done or materials furnished before April 20, 1883, for the reason

that the work to be done, or the service to be performed, by appellant for appellee, was an entirety. What appellant agreed to do was to plaster the whole building; and the lathing, and calcimining, and drying, and all the other items named in the specifications, were merely incidental to, and parts of, the work of plastering. Undoubtedly the general rule is that, where there is no special contract, the law will imply an agreement to pay for the materials as delivered, and the work as done. But where one continuous piece of work, consisting of a number of parts or items, is to be performed, the statute of limitations does not begin to run upon the completion of each separate part or item, but upon the completion of the whole. If the several items are merely parts of one transaction, the statute begins to run from the date of the last item, and all the others are saved from the bar. "Each item is not to be regarded as a separate cause of action, but the whole rather as a continuous dealing." (*Frankoviz* v. *Smith,* 34 Minn. 403, and cases there cited). In *Hall* v. *Wood,* 9 Gray, 60, the action was on the common counts with a bill of particulars, containing some items which bore date more than six years before the beginning of the suit; and it was held that recovery could be had for the full amount, notwithstanding the statute of limitations, as the whole work was done under an entire contract.

In *Walker* v. *Goodrich,* 16 Ill. 341, we held that the statute of limitations could not commence to run against an attorney until the legal services contracted for had been performed by a termination of the suit, or a release from the contract, and it was there said: "Did the statute of limitations commence running at the termination of each day as to the services rendered on that day? Were the solicitors obliged to pause in their defense, within each period of five years, to commence a suit against their clients for the services already performed, or forfeit them? The very statement of the proposition shows how embarrassing, inappropriate and indeed impracticable such a rule would be?"

We do not think, that the case of *Schillo* v. *McEwen*, 90 Ill. 77, can be construed as holding a contrary view to that here expressed. In that case, the evidence showed, that the last item was of goods delivered before the period of five years began to run, and none were delivered within five years before the commencement of the suit. The doctrine was there recognized, that, in case of a running account, if some of the items are of goods delivered within the statutory period, other items of goods delivered before the commencement of such period will be withdrawn from the operation of the statute of limitations.

In the case at bar, it is conceded that a part of the labor of plastering the building was done on April 21, within the period of five years before the commencement of the suit. The labor so performed was a part of the performance of one continuous piece of work, and was a part of the execution of an entire contract. As the plastering done on that day was within the period limited by the statute, the balance of the plastering theretofore done, and of which the labors of that day were a mere continuation, was withdrawn from the operation of the statute. But the instructions were calculated to make the impression upon the minds of the jury, that plaintiff's right of recovery was barred except for the work done on April 20 or 21, 1883. The plastering which appellant's men did on those days, was so inconsiderable, that the jury may have regarded the right to recover its price or value as cancelled by the smallest and most insignificant items of set-off which defendant's evidence tended to sustain, while the right to a larger recovery may have led to a more careful consideration of such items of set-off. We are unable to say that the plaintiff was not injured by the error committed in the giving of these instructions.

The judgments of the Appellate and Circuit Courts are reversed and the cause is remanded to the Circuit Court.

*Judgment reversed.*