## CRAMPTON ET AL., ADMINISTRATORS, v. LOGAN.

[No. 3,577.    Filed February 25, 1902.]

CONTRACTS.—*Evidence.*—*Implied Contracts.*—*Family Relation.*—In an action on a claim against a decedent's estate for services rendered ·by claimant as housekeeper for decedent it was shown that plaintiff was decedent's sister-in-law and went to his home to assist his wife, and after the wife's death in 1865 plaintiff continued to act as housekeeper until 1897; that she received from decedent at various times money amounting to $995.50. Witnesses testified that decedent had stated that if she would stay with him he would do well by her, that she had taken good care of him, and in explanation of not having made provision for her in his will said that the chances were that she would earn both of his farms, that she would be paid. Two assessors testified that decedent said that he was indebted to plaintiff and upon being informed that if he made any deductions witness would have to assess plaintiff, decedent said let it go. *Held,* that there was evidence upon which the jury could find that plaintiff could reasonably expect compensation and that it was reasonable and just that she should receive remuneration. *pp. 406–411.*

LIMITATION OF ACTIONS.—*Computation of Time.*—*Contracts of Hire.*— Where in a claim against a decedent's estate for labor the services are continuous, and no time is fixed for payment, or when the contract shall end, the statute of limitations will not begin to run until the services are ended. *pp. 411–413.*

SAME.—*No Distinction Between Express and Implied Contracts.*—There is no distinction in respect to the statute of limitations between express or implied contracts. *pp. 413, 414.*

From Howard Circuit Court; *W. W. Mount*, Judge.

Action by Susan E. Logan upon a claim against Ruth J. Crampton and others, administrators of the estate of Isaac Crane, deceased, for services as housekeeper. From a judgment for plaintiff, defendants appeal. *Affirmed.*

*R. S. Gregory, A. C. Silverburg, O. J. Lotz, E. T. Reasoner, J. W. O'Hara, L. J. Kirkpatrick, J. F. Morrison* and *T. C. McReynolds*, for appellants.

*J. C. Blacklidge, C. C. Shirley, C. Wolf, J. Mitchell, N. N. Antrim* and *W. B. McClintic*, for appellee.

BLACK, J.—This was an action upon a claim of the appellee, Susan E. Logan, against the estate of Isaac Crane, deceased, represented by the appellants, upon an account for services as housekeeper from August 12, 1865, to April 19, 1897, at various amounts per week at different periods; the whole account, as shown by the statement of claim, amounting to $9,110, with credits thereon, stated as amounting to about $995.50, the credits being made by the claimant for money received at various times from 1875 to 1895, and, as to a small portion of the credits, at dates which she said she could not state. The cause was commenced in 1897 in Miami county, and the venue was changed to the court below, where there was a trial by jury, a verdict being returned in favor of the appellee for $4,115.

It appeared in evidence that the appellee was the sister of the wife of the intestate, and went to his home at a time when he was building a new brick dwelling-house and his wife wanted some assistance; the appellee being then an unmarried woman about twenty years of age. The intestate had one child that died in infancy. When the appellee had been so at the residence of the intestate about two months, his wife died. The intestate was not thereafter married again. The appellee, remaining unmarried, continued to live at the residence of the intestate, acting as his housekeeper and performing domestic services in that capacity for nearly thirty-two years, and until his death, at an advanced age, in August, 1897, leaving no children surviving him. In 1894 he had a stroke of paralysis, and during the latter part of his life the appellee gave him increased care and assistance. In 1897 a guardian was appointed for him as a person of unsound mind. No service rendered after the appointment of a guardian is embraced in appellee's claim. During all the period of her service on which her claim is based she had charge of the household affairs, assuming the responsibilities and performing the labors of a house-

keeper or female head of a farmer's household. No express contract between the parties relating to the appellee's services appears in evidence.

A considerable portion of the argument here has been devoted to the question as to the sufficiency of the evidence. In view of the scope of the argument and the earnestness of counsel, it may not be improper, before further reference to the facts in evidence, to state some elementary principles involved in the case. An action will not lie to recover for services, though they be beneficial, if voluntarily rendered, without expectation at the time of the performance thereof that they will be paid for; and the fact that the services have been rendered with the hope or the design on the part of the person performing them that they will be gratuitously rewarded or paid for through the generosity of the person for whom they have been rendered will not take the case out of the rule. It is also a general rule that where one does work or performs service for another at his request, or which he knowingly permits, availing himself thereof and accepting benefit therefrom, an agreement is implied that the latter shall pay the former what the work or service is reasonably worth. But where the person rendering services and the person for whom they are rendered are members of a family, living together as one household, and the service appertains to such condition, an implication of a promise on the part of the recipient to pay for the services does not arise from the mere rendition and acceptance thereof, but the services will be presumed to be gratuitous; and, to support a recovery therefor, the burden will be upon the plaintiff who rendered the services to show an express contract for compensation, or such circumstances of the services as manifest a reasonable expectation on his part of compensation therefor. This presumption affecting members of the household applies to all who actually live together as a family, however related, or whether related or not by blood or affinity, though the pre-

sumption may be strengthened or weakened by the closeness or remoteness of the relation and intimacy of the parties as a circumstance of the case.

The fact that the services were rendered without express contract while the parties were members of a family living together as a household, it is sometimes said, rebuts the presumption or implication that compensation was intended for the accepted services, and raises a presumption that they were gratuitous, which may be rebutted by proof of circumstances such as justify an inference that compensation was intended. Or it may properly be said that for the services of the member of the family the law will not, as in ordinary like cases of requested or accepted services, raise an implied promise to pay; but recovery therefor may be had upon proof either of an express contract, the terms of which will control, or of an implied contract; and that to establish an implied contract, the evidence must show circumstances of such potency as to overcome the *prima facie* presumption that the services were rendered gratuitously. The relation between members of the family in the conferring and receiving of benefits and the rendering and accepting of services appertaining to that relation is not contractual, but such benefits and services are presumed to be bestowed and rendered in the performance of duty or the manifestation of affection or kindly regard, for which remuneration is not contemplated and should not be expected by either party, being the products, as may well be presumed, of higher motives or impulses than desire of pecuniary reward; and for the recovery of compensation for services rendered by a member of a family, as in all other cases of recovery for services, a contract must be shown, either express or implied; and if the circumstances authorized the person rendering the services reasonably to expect payment therefor, by way of furtherance of the intention of the parties, or because reason and justice require compensation, the law will imply a contract therefor. The

question as to whether or not there was either an express
contract or an implied contract to pay for the services is
matter of fact for the jury to determine upon the evidence;
and this court in passing upon evidence in such cases must
be guided by the well established rule applicable in all
cases that the province of the jury to determine questions
of fact must not be invaded, and their determination therein
will not be disturbed if there was evidence tending to sup-
port the verdict. *Hill* v. *Hill*, 121 Ind. 255; *Smith* v. *Den-
man*, 48 Ind. 65; *Cauble* v. *Ryman*, 26 Ind. 207; *Wallace*
v. *Long*, 105 Ind. 522, 55 Am. Rep. 222; *Adams* v. *Adams*,
23 Ind. 50; *House* v. *House*, 6 Ind. 60; *Hays* v. *McConnell*,
42 Ind. 285; *Pitts* v. *Pitts*, 21 Ind. 309; *Lockwood* v. *Rob-
bins*, 125 Ind. 398; *Schoonover* v. *Vachon*, 121 Ind. 3;
*Story* v. *Story*, 1 Ind. App. 284; *Chamness* v. *Cox*, 2 Ind.
App. 485; *James* v. *Gillen*, 3 Ind. App. 472; *Knight* v.
*Knight*, 6 Ind. App. 268.

The evidence, the substance of some of which we have
stated, was voluminous, and in some respects conflicting.
After the appellee went to live at the home of the intestate,
she received about $400 for her portion of the estate of her
father. This money she loaned at interest. In 1883 she
purchased twenty acres of land for $750. She then re-
ceived for that purpose $400 from the intestate, she at that
time having other money out at interest. One of the credits
given by her upon her claim against the intestate's estate
was for $400 cash paid in 1883, and the fact that she got
that sum from the intestate at that time was proved on the
trial.

William Ryan, a nephew of the appellee, testified that
about the year 1880 or 1881 he had a conversation with the
intestate in the presence of the appellee; that the witness
wanted the appellee to keep house for him, and proposed to
her to come and keep house for him; and that the intestate
said that, if she would stay with him, he would do well by
her, that he would provide for her well in the end. The

same witness testified that, perhaps two years before the intestate became paralyzed, he had another conversation with him, when the intestate said he was going to do well by Susan; that she had taken good care of him; and that he was going to do well by Susan. This witness testified to another conversation in 1895; that he came into the house and found his aunt in tears, and asked her what was the matter, the intestate being present; that she told the witness that the intestate had made his will and had left her out entirely again; that he asked the intestate why he did that, and the intestate said he didn't hardly know how to make a will, and said, "The chances are that she will earn both of those places yet". The intestate then and at his death owned eighty acres of land, on which he resided, and one hundred and twenty acres about six miles from the home place.

A witness, one Holcomb, testified that in 1896 he was present when the appellee was assisting the intestate to put on his overcoat, and the witness said to the intestate that he was a bother to Miss Logan, and the intestate said: "I am a heap of bother to her, but I will make it all right with Susan in the end". Margaret Logan, a niece of the appellee, testified that in 1896 she was present, and the intestate wanted the appellee to come and wait on him; that the appellee was doing some work, and he called her, and she came and assisted him. Appellee asked him why he did not let the witness wait on him, and he said he wanted her. Appellee said, "You are always calling for me, but I don't believe you think anything of me; for you did not remember me in your will". He said: "Well, Susan, you will be well paid; there is two farms to pay you out of. I think you can be paid out of them". A witness, who was deputy assessor in 1894, testified that he assessed the intestate that year, and, in speaking of making deductions of his indebtedness, the intestate said that he was indebted to Susan Logan. The witness then told him that, if he made any deduction, witness would have to assess Susan Logan; and the intestate

said that, if that was the case, to let it go; and he did not make any deduction. Another witness, who, as deputy assessor, assessed the intestate in 1897, testified that the intestate said he owed the appellee, but he did not deduct anything therefor, saying to let it go. It can not properly be said, we think, that there was not any evidence upon which the jury could find that the appellee could reasonably expect to be compensated, and that it was reasonable and just that she should receive remuneration. The amount awarded by the jury was within the evidence as to the value of the services.

But it is claimed on behalf of the appellants that in no event, under the facts of the case, could there be a recovery for more than six years, the period of statutory limitation for actions on accounts and contracts not in writing; and, in this connection, counsel discuss instructions on this subject. Among the instructions requested by the appellants was the following, numbered ten: "The statute of this State provides that all actions on accounts and contracts not in writing shall be commenced six years after the cause of action has accrued, and not afterward, or if an action is brought to recover a balance due upon a mutual, open, and current account between the parties, the cause of action shall be deemed to have accrued from the date of the last item proved in the account on either side. By the term 'mutual account,' as here used, is meant an account kept by each party, and there must be two sides to the account. Payments alone made on one side of the account do not make it an open and mutual account". The court gave this instruction, adding thereto the following: "But where services are continuous, and there is no time fixed for payment, or when the contract shall end, the statute of limitations will not begin to run until the services are ended". To this modification the appellants excepted.

The court refused to give instructions eleven and twelve asked by the appellants, as follows: "(11). Where all the

items of an account are on one side, the fact that some of them are within six years before the commencement of the action will not take the others of longer standing out of the operation of the statute of limitations, and in such case only the items of account that have accrued within six years can be recovered for. (12) This is an action upon the account for services rendered by the plaintiff, as alleged therein, as housekeeper for the defendants' decedent. It is alleged and averred that the items of the account therein declared upon have arisen upon account of labor and services rendered, commencing August 12, 1865, and ending April 19, 1897. The items of account therein declared upon are stated as owing and due plaintiff for services rendered as declared upon in the complaint. There are certain credits given upon said account, aggregating $995.50. The court instructs you that, under the law, an account where items are all on one side, there being nothing on the other side except credits of payment, such an account is not mutual, open, and current, within the meaning of the statute, between the parties; and if the jury further believe that Isaac Crane died August 4, 1897, then the court further instructs you that all the items of account stated in plaintiff's complaint that had accrued, if any there be, more than six years before his death, would be barred by the statute of limitations, and the plaintiff can not recover in this case upon such items." In *Littler* v. *Smiley*, 9 Ind. 116, an action against administrators of a decedent's estate for work and labor performed by the plaintiff, it was held that if the plaintiff performed labor for the intestate under an agreement to be paid therefor, without specifying at what time the payment should be made, or how long the labor should be performed, the statute of limitations would not commence to run until the labor was ended; that there being an entire contract to serve for an indefinite period, the rule that in an action on account, where all the items of the account are on one side, the fact that some items are within the period

of limitation does not take the others of longer standing out of the operation of the statute, would not apply to such action upon an entire continuing contract. In the case last named the service was rendered by the claimant in the family of her brother under circumstances such that the law, it was said, would not imply a promise to pay; and the court said there was evidence, which is not set out, tending to prove an express agreement. Such a continuing contract, however, may be an implied contract, and the same rule would apply to it. *Story* v. *Story*, 1 Ind. App. 284. In *Knight* v. *Knight*, 6 Ind. App. 268, 281, it was said: "The services in this case were continuous for nearly twenty years. Where no certain time is fixed for payment, or when the contract shall end, or where, as in this case, the evidence tends to support the theory that compensation was to be made to appellee at the death of Knight, if not before, the contract, whether express or implied, should be considered and treated as a. continuous one, and the statute of limitations would not begin to run until the services were ended".

The determination as to the applicability of the rule in question relating to the statute of limitations is not dependent upon the question as to whether the contract is express or implied. There does not seem to be any sufficient reason for the distinction in this respect which counsel for the appellants seek to make between an express contract and an implied contract. See, also, *Frost* v. *Tarr*, 53 Ind. 390; *Wright* v. *Miller*, 63 Ind. 220; *Schoonover* v. *Vachon*, 121 Ind. 3; *Taggart* v. *Tevanny*, 1 Ind. App. 339, 357; *Grave* v. *Pemberton*, 3 Ind. App. 71; *Carr* v. *Carr*, 6 Ind. App. 377; *Purviance* v. *Purviance*, 14 Ind. App. 269; *Bartel* v. *Mathias*, 19 Ore. 482, 24 Pac. 918; *Hickam* v. *Hickam*, 46 Mo. App. 496; *O'Brien* v. *Sexton*, 140 Ill. 517, 30 N. E. 461.

The case, *In re Gardner*, 103 N. Y. 533, 9 N. E. 306, 57 Am. Rep. 768, cited by appellants, and other cases in that state, in which, in effect, an action on such an entire con-

tinuing contract is treated as if upon an account of distinct items all on one side, are not in agreement with the doctrine long established in this State. The modification of the tenth instruction requested by appellants was correct, and their eleventh and twelfth instructions were not applicable to the case.

Other matters argued before us, so far as not covered by what we have already said, do not seem, upon consideration, to be of sufficient moment to require the further lengthening of this opinion.

Judgment affirmed.