WALTING *v.* BROWN, EXECUTRIX OF THE ESTATE OF
CARL H. JOHNSTON, DECEASED.

[No. 20,119. Filed November 29, 1965. Rehearing denied
December 22, 1965. Transfer denied May 2, 1966.]

*Herbert Wagers* and *Noel E. Sullivan,* of West College
Corner, and *Roger H. Smith,* of *Tague & Smith,* of Brookville,
for appellant.

*Elmer F. Bossert, William E. Toney,* and *John K. Bossert,*
of *Bossert & Toney,* of Liberty, and *Donald F. LaFuze* and
*Gale Graber,* of *LaFuze, Graber, Sparrenberger, Duvall &
Sullivan,* of Indianapolis, for appellee.

BIERLY, J.—Appellant, Mary Walting, brought this action
in the Union Circuit Court of Union County, Indiana, by

way of timely filing a claim against the Estate of Carl H. Johnston, deceased, asking for compensation for personal services rendered by her to the decedent through the years from 1947 until decedent's death in 1961; and, also, as a second charge in said claim, appellant sought recovery from said estate for a pro-rata share "for payments on a mortgage, taxes, permanent improvements and insurance."

The executrix of said estate denied said claim on December 21, 1962. Thence, as required by law, said claim was transferred to the civil issue docket, designated as Cause No. 7871 in the Union Circuit Court.

Appellee filed an answer in two paragraphs, the first, a denial of each and all allegations contained in said claim, and the second, as an affirmative answer alleging that the portions of the claim accruing six (6) years prior to December 12, 1961 were barred by statute of limitations.

Upon the issues thus formed, the cause was tried by the court on agreement of the parties. Appellant submitted her evidence. Appellee introduced no evidence, apparently relying on allegations set forth in the answer and, also, relying upon an assumed weakness of appellant-plaintiff's case.

The court found in favor of said Estate-appellee and entered judgment as follows:

"WHEREFORE AND WHEREUPON IT IS ORDERED, ADJUDGED AND DECREED BY THE COURT that the claimant and/or plaintiff take nothing by her claim or complaint and that this case be and hereby is adjudged finally disposed of."

Costs were ordered taxed against plaintiff-appellant.

On June 25, 1963 appellant filed a motion for new trial, asserting that the decision of the court is contrary to law, and, further, that the decision is not sustained by the evidence. This motion was overruled on the 18th day of October, 1963.

Appellant submitted the transcript and assignment of

errors in this court on March 16, 1964. Said assignment of errors, omitting formal parts, is as follows:

"The appellant avers that there is manifest error in the judgment and proceedings in this cause which is prejudicial to the appellant, in this:

"(1) The Court erred in overruling appellant's motion for a new trial."

The sole specification of error available for consideration and review is that the decision of the court is contrary to law.

"To determine this question we will consider only the evidence most favorable to appellee, together with any reasonable inferences which may be drawn there-from. *Rowe* v. *Johnson* (1945), 223 Ind. 289, 291, 60 N. E. 2d 529, *supra.*" *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 104 N. E. 2d 669.

It may be of some significance to set forth stipulations by the parties as indicating at least a sphere of agreement, the first of which follows:

"It is hereby stipulated by counsel for the claimant and for the Defendant that Cecile Johnston, the daughter of the claimant, and wife of Carl Johnston died on March 28, 1947.

"It is further stipulated by the parties that Carl Johnston died December 11, 1961.

"It is further stipulated that Carl Johnston and Mary Walting own a farm as tenants in common, Mary Walting owning a five-eights interest, and Carl Johnston owning a three-eights interest, from the date of the death of the daughter, Cecile Johnston.

"It is further stipulated that from the date of the death of the daughter, Cecile Johnston, the farming operation on this farm was operated on a fifty-fifty basis, Mary Walting receiving fifty per cent of the income and Carl Johnston receiving fifty percent of the income."

We have an unequal feature in the matter of ownership and rental arrangement of the 100-acre farm in the case at bar. Since the appellant was the owner of an undivided five-eights (5/8) interest in the farm, the decedent, Carl H. Johnston,

was her tenant therefor and, in addition thereto, Johnston was the owner of an undivided three-eights (3/8) interest in said farm which acreage he likewise operated.

Assuming, as tenant of the said undivided five-eights (5/8) interest of said farm owned by appellant, that Johnston shared equally the net normal income with appellant on a rental basis, appellant's share would be computed as five-sixteenths (5/16) of the farm income, and Johnston, the decedent, would be entitled to a five-sixteenths (5/16) interest thereof. Hence, the tenant's total share of normal net income from the operation of the farm would be a result of adding the five-sixteenths (5/16) share and the three-eights (3/8) [or 6/16], the same being eleven-sixteenths (11/16) as against the five-sixteenths (5/16) share for appellant.

From the above computation based upon an assumed normal landlord-tenant relationship, the share of Johnston's total farm net income exceeded by 1/16 twice the net income for appellant; nevertheless, by the stipulation heretofore set forth, the net income of appellant and Johnston-decedent was divided on a fifty-fifty basis.

The paramount issue in this appeal which this court is to determine is whether appellant presented evidence of probative value to establish, as a matter of law, an implied contract for the payment of services rendered by her to Johnston prior to his demise.

The question of the relationship between appellant and Johnston-decedent was disputed during the trial and remains so in this appeal. Appellant and her daughter, Cecile Johnston, with her husband, Carl H. Johnston, were living in the same household at the time of the death of Cecile Johnston. Thereafter, appellant and her son-in-law (or former son-in-law) continued to live in the same household until the death of Carl Johnston. During this period specifically what was the legal relationship of appellant and Carl Johnston?

When services are rendered by a claimant for a member of a family, the law will not raise an implication of a promise

on the part of a recipient to pay for the services from the rendition by the claimant and the acceptance thereof by the recipient, but such services will be presumed gratis by the parties.

"* * * This presumption affecting members of the household applies to all who actually live together as a family, however related, or whether related or not by blood or affinity, though the presumption may be strengthened or weakened by the closeness or remoteness of the relation and intimacy of the parties as a circumstance of the case." *Crampton* v. *Logan* (1902), 28 Ind. App. 405, 63 N. E. 51.

However, recovery may be founded upon proof by the claimant of an express or implied contract that the services were rendered in expectation of payment. *Wainwright Trust Co., Admr.* v. *Kinder* (1918), 69 Ind. App. 88, 120 N. E. 419; *Crampton* v. *Logan, supra.* Likewise, in the absence of evidence of any blood or family relationship, no presumption exists that the services rendered by the claimant to the decedent were gratuitous. *Johnson* v. *Estate of Gaugh et al.* (1955), 125 Ind. App. 510, 124 N. E. 2d 704. However, even in the absence of blood or family relationship, the claimant has the burden of proving an express or implied contract for payment of the services rendered and an action will not lie if at the time of performance the services were rendered without expectation of pay, the hope of reward through the generosity of the recipient being insufficient. *Wainwright Trust Co., supra; Crampton, supra.*

It is, however, true that an agreement for payment may be implied from the mutual relations, the situation and the conduct of the parties, and from the nature and character of the services rendered, where the claimant was not a member of the recipient's family. *Richmire, Admr.* v. *Deardurff* (1927), 86 Ind. App. 31, 155 N. E. 720.

In the case at bar, appellant argues that a legal relationship did not exist at decedent's death; that their former relationship of mother-in-law and son-in-law terminated on the death of decedent's wife; and that as a legal relationship

was non-existent, an implied contract to pay for services must be inferred.

Evidence of probative value disclosed that appellant owned a farm and that she lived in the farm home, which was later shared by appellant, her daughter, Cecile, and her son-in-law, Carl H. Johnston, until the death of the daughter in 1947, and, thereafter, appellant and the said appellee's decedent continued to live in the said home until the said Johnston's death in 1961; that during these years appellant and appellee's decedent retained kindly feelings of loyalty, mutual respect and devotion. Appellant was of the age of 82 years or more at the time of death of Johnston. Relying on this evidence, appellee argued,

"* * * there was a presumption that the services of appellant to her son-in-law were gratuitous and Appellant could not recover merely by proving that services were given and received."

Regardless of whether or not a legal relationship existed between appellant and decedent at the time of his death, we are constrained to note and stress the importance of the fact that appellant and the decedent were members of the same household for more than twenty (20) years.

Although the case of *Wainwright Trust Co.* v. *Kinder*, *supra*, involved an action for services rendered a deceased parent, we are impelled to note the cogency of portions of that opinion as applicable to the case at bar:

"The better reason, and the decided weight of authority in this state, is in harmony with the law as above stated [*Crampton, supra*], though there are decisions in this state which are not in entire harmony with the doctrine as above announced, and which place some restrictions on the application of the doctrine of implied contracts as applied to cases like the one at bar.

"Such cases emphasize the idea that there can be no implied contract unless the evidence clearly shows an intention on the part of the one for whom the services were rendered to pay for the same, and the claimant rendered the services in expectation of payment, rather than from any other or

higher motive growing out of the relation of the parties and, furthermore, that such intention shall appear by something said by the one for whom the services were rendered, to the party rendering the same, or that it must affirmatively appear that such statements were communicated to and acted upon by the one rendering the services, in expectation of compensation.

"There can be no doubt that such a showing would be sufficient to warrant the finding of an implied obligation to pay, but, under the law as generally announced by text-writers and the great majority of decisions, such obligation may properly be inferred from facts, circumstances and the relations of the parties that do not meet all the requirements of such restricted rule. The intention to pay and the expectation of compensation may be inferred from conduct where equity and justice require compensation, as well as from direct communications between the parties, or communications through other persons representing them. The cases which restrict the rule, as above indicated, seem to overlook or ignore the very obvious fact that expectation of compensation may coexist with higher motives prompted by affection or the sense of duty, and that the existence of the latter does not necessarily exclude the idea of pecuniary compensation.

"'* * * To warrant the finding of such contract, the elements of intention to pay on the one hand and expectation of compensation on the other must be found to exist; but such elements, like other ultimate facts, may be inferred from the relation and situation of the parties, the nature and character of the services rendered, and any other facts or circumstances which may reasonably be said to throw any light upon the question at issue.

"The right and justice of the claim for compensation, or the wrong and injustice, if any, attending such claim, may be considered, but only as tending to aid in ascertaining the intention and expectation of the parties in relation to the question of compensation for the services in controversy." (Bracketed words ours).

Appellant admits that this court must consider facts favorable to appellee as shown by the evidence, together with the reasonable and legitimate inferences arising therefrom.

When considering that appellant, Mary Walting, who, at the time of the death of Carl H. Johnston, was of the age of 82 years, had lived with her daughter, Cecile, and son-

in-law, Carl H. Johnston, as members of the same household for twenty years in a farm home until the death of Cecile in 1947, and thereafter continued to live in said farm home with Carl H. Johnston for fourteen years until his death; and, further, when we consider that during said fourteen years appellant and appellee's decedent continued the operation of said farm, with appellant owning a five-eights (5/8) interest and decedent owning a three-eights (3/8) interest in said farm, with a division of the net income on a fifty-fifty basis, we must recognize a very unusual situation with respect to the relationship of appellant and Johnston, whether Johnston be considered a son-in-law after the death of his wife, Cecile, or a former son-in-law. The record evidence discloses no unusual changes in the operation of the farm by Johnston nor in the maintenance and care of the home by the appellant after the death of her daughter, Cecile.

Then, again, the advanced age of appellant compared with that of Johnston, when considering their relative life expectancies, would lead only to a speculative conclusion that Johnston would survive appellant, with the resultant probability that the responsibility of the care and maintenance of appellant would rest upon Johnston.

The evidence failed to disclose any arrangement founded upon a contract, either written, oral or implied, that appellant had ever agreed that payment would be made to her for services to Johnston or that Johnston had promised or agreed to make such payment or payments to appellant.

It further appears from the evidence favorable to appellee's decedent that, in general, the same business and social relationship existed between appellant and appellee's decedent following the death of appellee's daughter, Cecile, that had existed prior to Cecile's death.

Even though a claim for services rendered Johnston was submitted by appellant, it was incumbent upon appellant to prove that the services were rendered either upon an expressed agreement or the forthcoming of facts, compelling

an inference that appellant expected payment for such services or that an implication of a promise to pay was established. *Moslander* v. *Moslander's Estate* (1941), 110 Ind. App. 122, 38 N. E. 2d 268.

In the *Moslander, supra,* case, this court held as follows:

"In the case of *James, Administrator* v. *Gillen* (1891), 3 Ind. App. 472, 30 N. E. 7, this court says:
" ' . . .

" 'Where the relation of the parties is such that compensation, according to human intercourse, is ordinarily given and received, the law will create a promise to pay. This is generally the case where there appears to be no other adequate motive than the expectation of reward to prompt the performance of the service. But where its performance may be accounted for upon grounds more probable than the hope of pecuniary reward, such as acts of kindness and affection between members of a common family, prompted by a sense of love and duty, no promise to pay will be implied . . .' ."

We hold, in the case at bar, that no promise of payment for services by appellant as a mother-in-law or a former mother-in-law was implied.

Appellant cites several cases in support of her claim in the case at bar. In *Wainwright Trust Co., Admr.* v. *Kinder, supra,* a claim for services rendered was brought by an adult daughter against her parent, now deceased. In its opinion the court refused to follow *McClure* v. *Lenz* (1906), 40 Ind. App. 56, 60, 80 N. E. 988; also *Waechter* v. *Walters* (1908) 41 Ind. App. 408, 410, 84 N. E. 22; and held that an expressed contract need not be proved but a contract may be implied under the facts of the case. We see no parallel in this case with the case at bar. In the case of *Wainwright, supra,* the daughter seemed to have a situation similar to that of a servant.

In *Offenbacker, Admr.* v. *Offenbacker* (1933), 98 Ind. App. 689, 187 N. E. 903, we have a situation where a daughter-in-law sought to recover for services to a mother-in-law who

lived in the daughter-in-law's home. In this case the decedent had announced her intention to pay for the services. The court held that the daughter-in-law, although a stranger to the decedent, was entitled to recover compensation for services in her own name. This case, in no manner, is analogous to the case at bar.

In *Hunt* v. *Osborn* (1907), 40 Ind. App. 646, 82 N. E. 933, we have an appeal in an action by a neighbor against the estate of a decedent for services rendered. The Appellate Court held that the claimant must establish a contract between claimant and decedent. The court further held that the evidence established that the services by the claimant were mere acts of neighborly kindness, without expectation of compensation; that filing of a claim was merely an afterthought. We think there is great similarity in that case to the case at bar.

We are of the opinion that the evidence in the case at bar fails to establish, as a matter of law, an implied contract for payment for services rendered by appellant to appellee's decedent.

We are further of the opinion that the evidence most favorable to the appellee would portray a relationship designed for the mutual benefit of both the appellant and appellee's decedent.

Judgment affirmed.

Hunter, Mote, JJ., and Smith, P. J., concur.

NOTE.—Reported in 211 N. E. 2d 803.