**R.E. WOOD, Jr. and Julie Wood,
Plaintiffs–Appellants,**

v.

**MID–VALLEY INCORPORATED,
Defendant–Appellee.**

No. 90–3586.

United States Court of Appeals,
Seventh Circuit.

Argued June 19, 1991.

Decided Aug. 14, 1991.

Harold Abrahamson (argued), Kenneth D. Reed, Abrahamson, Reed, Adley & Enslen, Hammond, Ind., for plaintiffs-appellants.

Patricia T. Bergeson (argued), Stephen M. Naughton, Joel H. Spitz, Pope, Ballard, Shepard & Fowle, Chicago, Ill., W. Carl Jordan, Vinson & Elkins, Houston, Tex., for defendant-appellee.

Before CUMMINGS, POSNER and COFFEY, Circuit Judges.

POSNER, Circuit Judge.

 The Woods appeal from the dismissal of their suit upon the grant of summary judgment to the defendant, Mid–Valley. It is a diversity suit for breach of contract, and the parties agree that Indiana law governs the substantive issues. We should perhaps say more about this standard recital in our cases ("the parties agree that ____ state law governs the substantive issues"), inasmuch as it might be questioned on the ground that states, including Indiana, do not automatically enforce choice of law stipulations in contracts, *Barrow v. ATCO Mfg. Co.*, 524 N.E.2d 1313 (Ind.App.1988); *Moll v. South Central Solar Systems, Inc.*, 419 N.E.2d 154, 162 (Ind. App.1981); *Kolentus v. Avco Corp.*, 798 F.2d 949, 955 (7th Cir.1986) (interpreting Indiana law); *South Bend Consumers Club, Inc. v. United Consumers Club, Inc.*, 572 F.Supp. 209, 212 (N.D.Ind.1983) (same), and therefore might not enforce the stipulation in this case. Two separate questions must be distinguished, however. The first is the posture of the federal court in a diversity case involving a contract that stipulates what state's law is to govern. Since conflict of law questions are deemed "substantive" for purposes of the *Erie* doctrine, *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), the federal court must follow state law in deciding whether to enforce the stipulation. The second is the federal court's posture where, as in this case, the parties' agreement to the application of a particular state's substantive law is not found in a contract but is either stipulated by the lawyers or inferred from their failure to make an issue of it. The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits.

 The question whether to honor a choice of law stipulation in the second class of cases is not a question of choice of law; it is a pure question of procedure—in what circumstances will a court address an issue that the parties have not preserved? Ours

is an adversary system, and the circumstances in which a federal or any other court will do this are therefore exceptional. With the principal exception of issues going to the subject-matter jurisdiction of the federal courts, these courts are not required to and ordinarily do not create issues where the parties agree. American law is untidy, so there are other exceptions to this principle besides subject-matter jurisdiction. One is for sensitive questions touching the relations between the federal government and those tattered quasi-sovereigns, the states. See *Thomas v. Indiana*, 910 F.2d 1413, 1415–16 (7th Cir.1990), and cases cited there. Might conflict of laws questions be so categorized? Maybe so, but tradition is against it. Courts do not worry about conflict of laws unless the parties disagree on which state's law applies. We are busy enough without creating issues that are unlikely to affect the outcome of the case (if they were likely to affect the outcome the parties would be likely to contest them). We shall continue in this course.

In February 1985 Mid–Valley, a subsidiary of Brown & Root, the construction firm, hired Mr. Wood at a salary of $5,500 a month to be its manager of business development. His job was to get business for Brown & Root in the Chicago metropolitan area. Neither Brown & Root nor Mid–Valley had offices there, so it was understood that Wood would work out of his home until office space was found for him. Mid–Valley soon encountered financial difficulties and never did lease office space for Wood. Nor did it hire a secretary for him. He continued to work out of his home until he was terminated at the end of 1987. His wife provided secretarial help to him throughout the entire period. The suit is for $135,000, which is the Woods' estimate of the fair market value of adequate office space for Wood and the secretarial services rendered by Mrs. Wood.

The contract under which Wood was hired consists of an exchange of letters. The first is a letter from Wood "enclosing the proposals for employment which you requested." The enclosed proposals include a list of expenses—mainly phone, club dues, client entertainment, and travel expenses—estimated to total $89,000 a year, of which almost 40 percent is for client entertainment. The second letter, a reply to Wood's letter, states (so far as relevant to this case) that "we have reviewed your proposals" and will "pick-up your business expenses as submitted to us on our standard expense account forms. Neither of us can positively identify the exact amount that this will run but we both have a reasonable understanding of the magnitude. The only item on your list that seems rather high is the amount shown for client entertainment. We might need to talk about this a little." The third letter is Wood's reply, in which he states that "I am pleased to accept your offer of employment for a sales position with Mid–Valley, Inc. at the salary level indicated."

The list of proposed expenses in Wood's first letter had not included home-office or wife-secretary expenses, perhaps because the parties believed that Mid–Valley would lease office space and hire a secretary for Wood. However, according to Wood's deposition, in 1987 an official of Brown & Root, in response to Wood's repeated requests that he be compensated for the use of his home as an office and for his wife's services, said that he "was unaware of the situation but would take steps to rectify it immediately." Another official told Wood in similar vein, "Don't worry about it, we'll take care of it." The Woods contend that the open-ended language of the contract in conjunction with the oral representations made to him created a triable issue as to whether he was entitled to be compensated for his home office and his wife for her secretarial services.

To simplify the analysis we shall first consider the written contract, that is, the exchange of letters, alone. In the middle letter, Mid–Valley promises to pick up Wood's business expenses; and read without regard to context this could be viewed as giving Wood a blank check. But to ignore context is not an intelligent way to read. The other passage that we quoted from the letter makes plain that Mid–Valley is agreeing to pick up only expenses *on the list of proposed expenses that Wood*

had submitted with the letter to which *Mid–Valley was responding*, and even with respect to these, notably the item for client entertainment, Mid–Valley is reserving a right to disapprove unreasonable expenses. So there are two limitations on Mid–Valley's commitment to reimburse Wood's expenses: the expenses must appear on the list of Wood's proposals and they must be reasonable in amount. Wood's own conduct is consistent with this interpretation. *Pierce v. Yochum*, 164 Ind. App. 443, 451–54, 330 N.E.2d 102, 107–09 (1975); *Kennedy v. St. Joseph Memorial Hospital*, 482 N.E.2d 268, 274 (Ind.App. 1985). He did not just bill the company for his home-office and wife-secretarial expenses, but instead sought permission to seek reimbursement of these items— sought, in short, a modification of the contract. The original contract did not embrace these items. Cf. *BeerMart, Inc. v. Stroh Brewery Co.*, 804 F.2d 409, 411 (7th Cir.1986).

■ That brings us to the oral statements. They plainly are not confirmations of what Wood now contends is the meaning of the original contract. Read most generously to Wood they are promises to modify the contract, not promises to pay him $135,000 or any other amount representing the value of his home office and his wife's secretarial services. The contract never was modified to specify reimbursement for these items. Considering that Wood's salary was only $62,500 a year and that Mid–Valley and its parent Brown & Root were in the throes of a financial crisis, we think it unlikely that Mid–Valley would have agreed to pay $45,000 a year in home expenses—an amount that would have increased by 50 percent the reimbursable expenses that Wood had estimated in his proposals that formed the basis of the contract. Likely or not (and it's not totally out of the question, for Mid–Valley had intended to hire office space and a secretary for Wood, and the expense might have approached $45,000 a year), neither the letters nor the oral statements can sensibly be interpreted to make such a commitment.

■ Wood has two other strings to his bow. The first is promissory estoppel, and breaks over the fact that he failed to present any evidence of reliance. If he or his wife had forgone some other employment opportunity in reliance on being reimbursed for home office and secretarial expenses, that would be reliance enough to support a claim of promissory estoppel, *Lawshe v. Glen Park Lumber Co.*, 176 Ind.App. 344, 347–48, 375 N.E.2d 275, 278 (1978); *Snodgrass v. Baize*, 405 N.E.2d 48, 54 (Ind.App.1980), provided there was a real promise and not merely a statement of hope or intention, *Security Bank & Trust Co. v. Bogard*, 494 N.E.2d 965, 968–69 (Ind. App.1986); *Woodall v. Citizens Banking Co.*, 507 N.E.2d 999 (Ind.App.1987), and that it was sufficiently definite. *Lyon Metal Products, Inc. v. Hagerman Construction Corp.*, 181 Ind.App. 336, 341, 391 N.E.2d 1152, 1156 (1979); *Goldstick v. ICM Realty*, 788 F.2d 456, 462–63 (7th Cir.1986). We need not examine these questions; there is no suggestion of reliance.

■ Last is a claim for restitution of the value of Mrs. Wood's services. The Woods appeal to the principle that a person who renders services reasonably expecting to be paid for them is entitled to payment even if some technical defect defeats his claim (in this case her claim) for contractual relief. *Dyer Construction Co. v. Ellas Construction Co.*, 153 Ind.App. 304, 308, 287 N.E.2d 262, 264 (1972); *Health & Hospital Corp. v. Marion County*, 470 N.E.2d 1348, 1359–60 (Ind.App.1984); *Hartke v. Moore–Langen Printing & Publishing Co.*, 459 N.E.2d 430, 432 (Ind.App.1984); *U.S. Controls Corp. v. Windle*, 509 F.2d 909, 911 (7th Cir.1975). It is a sound principle, but it is inapplicable here, though not because, as Mid–Valley argues, a party cannot seek restitution in respect of services covered by a valid contract. That is true. *Milwaukee Guardian Insurance, Inc. v. Reichhart*, 479 N.E.2d 1340, 1343 (Ind.App.1985); *Dedelow v. Rudd Equipment Corp.*, 469 N.E.2d 1206, 1210 (Ind. App.1984); *Kincaid v. Lazar*, 405 N.E.2d 615, 619 (Ind.App.1980). The courts do not sit to improve the bargains that parties freely negotiate. But Mrs. Wood did not

have a contract with Mid–Valley. Her claim for restitution fails on another ground, that she had no reasonable expectation of being paid. *Bayh v. Sonnenburg,* 573 N.E.2d 398, 408–09 (Ind.1991); *Lafary v. Lafary,* 522 N.E.2d 916, 918 (Ind.App. 1988); *Biggerstaff v. Vanderburgh Humane Society, Inc.,* 453 N.E.2d 363, 364 (Ind.App.1983); *Walting v. Brown,* 139 Ind.App. 18, 22, 211 N.E.2d 803, 806 (1965). Not having been hired by Mid–Valley, she could hope to be paid only if her husband was able to persuade Mid–Valley to compensate her as part of his claim for reasonable and necessary expenses. Her entitlement stood or fell with her husband's. She had no *independent* claim to restitution. And he had no claim because his rights were defined by his contract.

AFFIRMED.